**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARISOL DATIL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 8274 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| C.R. BARD, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

After experiencing complications from an implanted Align Urethral Support System ("Align") manufactured by Defendant C.R. Bard, Inc. ("Bard"), Plaintiff Marisol Datil filed claims against Bard directly in the C.R. Bard, Inc., Pelvic Repair System Products Multi-District Litigation 2187 ("Bard MDL") in the United States District Court for the Southern District of West Virginia. Datil asserts claims for negligence (Count I), strict liability design defect (Count II), strict liability manufacturing defect (Count III), strict liability failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranty (Count VI), and punitive damages (Count VIII). The Bard MDL court transferred Datil's case to this Court on December 17, 2019. Before the Court is Bard's motion for partial summary judgment, which asks the Court to enter judgment in Bard's favor on all but the strict liability design defect and punitive damages claims. Datil does not contest the negligence and strict liability manufacturing defect claims and the negligent inspection, marketing, packaging, and selling claim (parts of Count I and Count III). Because issues of fact remain concerning Datil's claims for negligent and strict liability failure to warn (part of Count I and Count IV) and breach of express and implied warranties (Counts V and VI), those claims must proceed to trial.

## BACKGROUND

I.  **Compliance with Summary Judgment Requirements**

As an initial matter, the Court must address Bard's motion to strike Datil's statement of additional facts. Bard first argues that the Court should disregard the additional facts, which Datil appended to the parties' joint statement of undisputed facts, because Datil deviated from the Court's summary judgment procedures. But both parties appear not to have fully understood the Court's summary judgment procedures. These summary judgment procedures differ from Local Rule 56.1, in that this Court requires the parties to submit a joint statement of undisputed facts. *See Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 711–12 (7th Cir. 2015) (affirming this Court's summary judgment procedures). The party opposing summary judgment may submit additional facts it contends demonstrate a genuine issue of material fact in its response, providing citations to supporting material. Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice, https://www.ilnd.uscourts.gov/judge-info.aspx?VyU/OurKKJRDT+FUM5tZmA==. The joint statement of undisputed facts, however, should include undisputed facts proffered by both parties, not only agreed facts that the moving party deems relevant. Although the parties may disagree on the inferences to be drawn from the undisputed facts, to the extent admissible evidence supports a proposed fact, a party cannot refuse to stipulate to that fact on the basis that it deems the fact "not material" or "irrelevant." *Id.*

Here, although Bard may disagree with the relevance of Datil's "additional facts," it does not argue that the evidence does not support these facts. Instead, without any articulated disagreement with the content of the statements, Bard refused to agree to their inclusion in the joint statement and reserved the right to respond to the additional facts after Datil filed her response brief. Bard then filed a motion to strike Datil's additional facts in conjunction with its

reply brief, necessitating further briefing of that motion after the parties completed briefing the substance of the summary judgment motion. The Court's procedures are designed to avoid this exact situation. Bard should have raised any objections to the additional facts prior to filing its summary judgment motion so that the Court could address them before the parties briefed Bard's motion for summary judgment. Nonetheless, the Court briefly considers Bard's objections that go to the admissibility of the evidence on which Datil relies for her additional facts.

"Evidence offered at summary judgment must be admissible to the same extent as at trial, at least if the opposing party objects, except that testimony can be presented in the form of affidavits or transcripts of sworn testimony rather than in person." *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). "Documents must be authenticated by an affidavit that lays a proper foundation for their admissibility, even at the summary judgment stage." *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 769 (7th Cir. 2020). "Courts are entitled to rely on lawyers to decide which potential objections are worth raising and which are not," and parties and courts often overlook the authentication requirement at the summary judgment stage. *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) ("[W]hen one side fails to cross all evidentiary t's and dot all procedural i's—it is also not unusual for opposing lawyers to choose to overlook available evidentiary or other procedural objections. . . . . [M]any such defects in summary judgment evidence could be cured quickly with a supplemental affidavit or two."). Here, however, because Bard raises objections to Datil's submission of several unauthenticated documents, the Court must resolve the objections. *Steffek*, 948 F.3d at 769 ("[T]he court may not simply ignore an objection to evidence the court will rely upon for its decision.").

Bard argues that Datil relies on the following unauthenticated documents: (1) medical records from her revision surgery, (2) the Phillips Sumika material safety data sheet ("MSDS") for Marlex polypropylene, and (3) a September 2, 2008 Bard inter-office memorandum (the "Orr Memorandum"). In response to Bard's motion to strike, Datil puts forth evidence she claims authenticates these documents.[1] With respect to the medical records, Datil points out that Dr. Alshahrour brought the records with him to his deposition and has personal knowledge of them. As for the MSDS, Datil submits excerpts of the deposition of the corporate representative for Phillips Sumika Polypropylene Company regarding the subject matter of the MSDS. Similarly, Datil presents an excerpt from the deposition of Robert Orr, the author of the Orr Memorandum, in which he discusses that document. Although Datil could have done a better job of authenticating these documents at the summary judgment stage, because these individuals can testify that each "item is what it is claimed to be" based on their knowledge of the documents and Bard does not raise any specific argument that these documents are not in fact genuine, the Court finds that Datil has sufficiently authenticated the documents to allow the Court to consider them here. Fed. R. Evid. 901(b)(1); *see Quinn v. Wexford Health Sources, Inc.*, No. 3:17-CV-00669-NJR, 2020 WL 888048, at *2 (S.D. Ill. Feb. 24, 2020) ("Courts in the past have frowned upon mere *pro forma* objections based on authenticity without any indication that the evidence may not in fact be genuine."). The Court therefore denies Bard's motion to strike and proceeds to recount the facts before the Court.

---

[1] Although Bard argues in reply that the Court should disregard the additional support provided by Datil to authenticate these documents, the Seventh Circuit has approved of a party supplementing the record to cure authentication issues. *Steffek*, 948 F.3d at 769 ("When an objection is raised, nothing stops the trial court from allowing the offering party to supplement the record to cure the defect.").

4

**II.     Facts**[2]

The Align, a transvaginal mesh product manufactured by Bard, uses Phillips Sumika's Marlex polypropylene.  In 2008, the MSDS for Marlex polypropylene stated: "MEDICAL APPLICATION CAUTION: Do not use this Phillips Sumika Polypropylene Company material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues."  Doc. 82-1 at 207.  That same year, Orr, Bard's Advanced Surgical Concepts Director, authored the Orr Memorandum, which discussed a proposed design of a better mesh implant for vaginal repair that would be lighter and include larger pores.

Datil, an Illinois resident, received the Align on January 30, 2012.  Dr. Adeeb Alshahrour, M.D. performed the implantation surgery at St. Anthony Hospital in Chicago, Illinois.  Before the surgery, Dr. Alshahrour reviewed the Align instructions for use ("IFU").  The IFU included a warning that the implant procedure carried a risk of infection and bleeding.  It did not discuss the frequency, severity, or permanency of adverse events associated with implantation.  Dr. Alshahrour testified that, at the time of Datil's surgery, he knew that potential risks or complications of the Align included vaginal pain, dyspareunia (painful intercourse), and mesh erosion.  But Dr. Alshahrour had not seen the MSDS prior to Datil's implantation surgery and did not know of any warnings cautioning against the use of Marlex polypropylene for permanent implantation.  Dr. Alshahrour also did not know of the optimal pore size or weight of mesh products before Datil's implantation surgery.

Several months after the surgery, Datil started experiencing pain.  Dr. Alshahrour determined that her complications and vaginal pain resulted from the Align.  Believing that

---

[2] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts, as well as Datil's Statement of Additional Facts.  The Court takes all facts in the light most favorable to Datil, the non-movant.

removal of the Align would alleviate her complications, Dr. Alshahrour performed revision surgery on May 24, 2013 to remove the Align.

Dr. Alshahrour specifically recalls discussing the possibility of vaginal pain, dyspareunia, and mesh erosion as possible side effects from the implantation of Align with Datil before the implantation surgery. Although Dr. Alshahrour testified that he told Datil of these risks, she testified that she would not have consented to the implantation if she knew of a mesh defect with the Align; the likelihood of mesh complications, including that the mesh could not be removed in full; or the probability of permanent pain, including pain during intercourse. Datil filed her short form complaint against Bard on October 2, 2013.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party

and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

### I. Datil's Conceded Claims (Parts of Counts I and Count III)

Bard moves for summary judgment on all but Datil's design defect and punitive damages claims. During the pre-filing meet and confer process, Datil agreed to dismiss her strict liability and negligence manufacturing defect claims. In her response to Bard's motion, Datil indicates that she only contests Bard's motion with respect to the breach of warranty and failure to warn claims. She therefore has conceded that Bard is entitled to judgment on the manufacturing defect claims and the negligent inspection, marketing, packaging, and selling claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). The Court turns to the failure to warn and warranty claims, which the Court analyzes under Illinois law.[3]

### II. Failure to Warn Claims (Part of Count I and Count IV)

Datil pursues failure to warn claims sounding in both negligence and strict liability. To prevail on her strict liability failure to warn claim, Datil must establish that Bard "did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 499 (2010). "A manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." *Id.* (quoting *Sollami v. Eaton*, 201 Ill. 2d 1, 7 (2002)). To prevail on

---

[3] The parties agree that Illinois law applies to Datil's claims and so the Court need not engage in a choice of law analysis.

her negligent failure to warn claim, Datil must establish that Bard "negligently failed to instruct or warn of a danger of the product and that failure proximately caused [her] injuries." *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 30.

Illinois follows the learned intermediary doctrine, which "provides that if the [implanting] physician is adequately warned of a [device's] risks, the patient has no failure to warn claim against the [manufacturer]." *Ringelestein v. Johnson & Johnson*, No. 16 C 4970, 2017 WL 2362630, at *3 (N.D. Ill. May 31, 2017) (citing *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 190–91 (2002)). "A corollary of [the learned intermediary] doctrine is the principle that a prescription medical device manufacturer need not provide a warning of risks already known to the medical community." *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 430 (2002). "[T]he adequacy of the warning must be judged by whether it sufficiently apprises physicians of the risks associated with the use of the [device]." *Hernandez v. Schering Corp.*, 2011 IL App (1st) 093306, ¶ 43; *see also Woodbury v. Janssen Pharmaceutica, Inc.*, No. 93 C 7118, 1997 WL 201571, at *7 (N.D. Ill. Apr. 10, 1997) ("In Illinois, in order to determine whether or not the warnings are adequate, we must look to whether the warnings are sufficient in form, content and intensity."). The learned intermediary doctrine does not apply if a doctor receives insufficient warnings and the risk is not well-known in the medical community. *Smith v. Boehringer Ingelheim Pharm., Inc.*, 886 F. Supp. 2d 911, 924 (S.D. Ill. 2012).

Bard argues that, because Dr. Alshahrour knew of the Align's potential risks and complications, Datil cannot succeed on her failure to warn claims.[4] Specifically, Bard points to

---

[4] Illinois requires expert testimony to establish the inadequacy of a medical device manufacturer's warnings. *See N. Tr. Co. v. Upjohn Co.*, 213 Ill. App. 3d 390, 399 (1991). Bard does not argue that no dispute exists as to the adequacy of the warning Bard provided about the Align and instead focuses its argument on whether Datil's doctor knew of all the information that Datil claims Bard omitted from the warnings. Because the question before the Court does not involve the adequacy of the warnings but rather Dr. Alshahrour's knowledge, the Court need not consider the opinion of Datil's expert, Dr. Bruce

8

Dr. Alshahrour's testimony that, prior to performing Datil's implantation surgery, he knew that potential risks and complications of the implantation of the Align included vaginal pain, dyspareunia, and mesh erosion. Datil responds that at least a question of fact exists as to whether Dr. Alshahrour knew of all the potential risks and complications of the Align, including:

> mesh degradation resulting in cracking, embrittlement, or stiffening; mesh contraction or shrinkage; the propensity of mechanically cut mesh to lose particles, rope, curl, and fray; mesh complications increasing with the amount of mesh implanted; pain other than "transitory" pain referenced in the IFU; chronic inflammation and foreign body response; chronic or permanent pelvic pain; chronic or permanent muscle and nerve damage or irritation; chronic or permanent dyspareunia; (if complications require explant) mesh is very difficult or impossible to remove; the potential need for multiple surgeries; that subsequent surgery may not alleviate symptoms—and could make them worse.

Doc. 83 at 5. While Bard treats the failure to warn claim only at a high level, Datil's response clarifies that it is more nuanced and includes whether Bard warned of, and Dr. Alshahrour knew of, the frequency, severity, and permanency of vaginal pain, dyspareunia, and mesh erosion resulting from implantation of the Align.

Whether the learned intermediary doctrine bars liability typically involves fact-bound inquiries not conducive to judgment as a matter of law. *See Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1016 (7th Cir. 2020) ("Ethicon asks us to rule as a matter of law on the contents of a reasonable warning for a specialized medical device. The question raises technical and highly fact-bound inquiries."); *Mason v. Smithkline Beecham Corp.*, No. 05-1252, 2010 WL 2697173, at *5 (C.D. Ill. July 7, 2010) ("Whether a prescribing physician is a learned intermediary is normally a question reserved to the trier of fact, who must determine whether the label was adequate."); *Mahr v. G.D. Searle & Co.*, 72 Ill. App. 3d 540, 562 (1979) ("Ultimately, the

---

Rosenzweig, and whether that opinion is inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

sufficiency of form, content and intensity is not resolved by pointing to a single document, but remains a question to be resolved by the trier of fact in the light of all the information provided by the manufacturer and all that was reasonably possible to provide."). That said, "courts regularly grant summary judgment when 'the physician's testimony shows unequivocally that s/he knew at the relevant time *all* the information which would have been included in a proper warning.'" *Giles v. Wyeth, Inc.*, 500 F. Supp. 2d 1063, 1066 n.3 (S.D. Ill. 2007) (quoting *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 82 (1st Cir. 1992).

The parties have presented the Court with limited evidence concerning the risks of implantation, Bard's warnings, and Bard and Dr. Alshahrour's knowledge of the potential risks and complications. Nonetheless, the Court finds the evidence before it presents a question of fact as to whether Dr. Alshahrour knew *all* the information that should have been included in an adequate warning. Dr. Alshahrour testified that he did not know of issues with the mesh that Bard used in the Align that could cause additional complications, suggesting that, while he had a general idea of the possibility of mesh erosion, he did not understand the degree to which the Align could cause problems after implantation. Similarly, his lack of knowledge about certain characteristics of the mesh suggests he may not have fully understood the extent to which the Align could cause vaginal pain. Because a jury could reasonably disagree as to whether Dr. Alshahrour sufficiently understood the Align's risks, the Court finds that Datil's failure to warn claim must go to the jury.[5] *See Huskey v. Ethicon, Inc.*, No. 2:12-cv-05201, 2015 WL 4944339, at *9–10 (S.D. W. Va. Aug. 19, 2015) (jury could reasonably find that a doctor did not know of

---

[5] Because Bard did not challenge the causation requirement in seeking summary judgment, raising it only in its reply brief, the Court need not address whether Datil has raised a question of fact on the issue. *See Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived."). The Court does note, however, that Dr. Alshahrour testified that had he known of the warning not to use the Marlex polypropylene for permanent implantation, he would not have used the Align on Datil, which could support causation.

all the risks associated with a mesh implantation where the doctor testified that, although she knew of the risks of pain associated with the implant, she did not know of other specific risks connected to the mesh implantation), *aff'd*, 848 F.3d 151 (4th Cir. 2017).

### III. Breach of Warranty Claims (Counts V and VI)

As for the warranty claims, Datil contends that Bard represented that the Align was safe, merchantable, and reasonably fit for its intended purpose but that, in actuality, the Align is unreasonably dangerous and defective. Bard first argues that Datil cannot pursue these claims because they are merely repackaged failure to warn claims. Alternatively, Bard argues that these claims fail because Datil did not provide timely notice as required by § 2-607 of the Illinois Uniform Commercial Code.[6]

Datil did not respond to Bard's argument that she cannot proceed on her warranty claims because they amount to repackaged failure to warn claims. Ordinarily, failure to respond to an argument results in waiver. *See Bonte*, 624 F.3d at 466. But the Court does not find the appropriate remedy here entry of judgment in favor of Bard on these claims. Instead, the Court concludes that Datil's waiver only establishes that the learned intermediary doctrine also applies to her warranty claims. *See Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 743–44 (S.D. W. Va. 2014). As the Bard MDL court noted, "the gravamen of [Datil's warranty] claims is [Bard's] failure to warn [Datil] about particular risks or dangers associated with [the Align]." *Id.* at 744. "If the learned intermediary doctrine 'could be avoided by casting what is essentially a failure to warn claim under a different cause of action . . . then the doctrine would be rendered

---

[6] In a footnote, without any legal citation, Bard also argues that Datil cannot prevail on the breach of express warranty claim because she has failed to identify any affirmative statement that constitutes an express warranty. The Court does not address this undeveloped argument. *See Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("[A] party can waive an argument by presenting it only in an undeveloped footnote."); *Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 770 n.1 (N.D. Ill. 2010) ("Undeveloped arguments and arguments raised in footnotes are waived.").

11

Case: 1:19-cv-08274 Document #: 102 Filed: 09/30/20 Page 12 of 14 PageID #:88505

meaningless.'" *Id.* at 745 (quoting *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997)).

But while Datil cannot avoid the application of the learned intermediary doctrine to her warranty claims, the warranty and failure to warn claims remain distinct, and she can pursue them simultaneously. "[E]ven if there is overlap in their factual or legal underpinnings, there is nothing that prevents a party from asserting multiple but legally distinct claims that arise from the same events." *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 WL 1836443, at *6 (N.D. Ill. May 8, 2017); *see also Corder v. Ethicon, Inc.*, --- F. Supp. 3d ---, 2020 WL 4194986, at *7–8 (E.D. Ky. July 21, 2020) (rejecting argument that a plaintiff could not pursue fraud and misrepresentation claims that were similar to failure to warn claim); Restatement (Third) of Torts: Prod. Liab. § 9 cmt. e (1998) ("The rule stated in this Section provides a remedy in tort in many cases in which a remedy for breach of express warranty or implied warranty of fitness for particular purpose is also available to the plaintiff. Breach of these warranties provides an independent basis of liability under the Uniform Commercial Code and may be combined in the same case with a claim for misrepresentation."). *But see Smith v. C.R. Bard, Inc.*, No. 2:16-cv-11817, 2018 WL 715448, at *3 (S.D. W. Va. Feb. 5, 2018) (granting Bard's motion for summary judgment on warranty claims under Illinois law because they amounted to repackaged failure to warn claims). Because the Court has found a question of fact precludes judgment as a matter of law as to the application of the learned intermediary doctrine in this case, the Court proceeds to address Bard's remaining argument that Datil did not provide timely notice of the alleged breach of warranty.

The Uniform Commercial Code, as adopted by Illinois, requires that a plaintiff provide a defendant with notice of a breach of warranty "within a reasonable time after he discovers or

should have discovered any breach." 810 Ill. Comp. Stat. 5/2-607(3)(a). The Illinois Supreme Court has recognized two exceptions to the direct notice requirement, finding direct notice unnecessary where: (1) the manufacturer has actual knowledge of the specific product's defect (i.e. "where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer"); or (2) a consumer plaintiff who has suffered a personal injury files a complaint that reasonably notifies the manufacturer of the alleged breach of warranty. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 492, 494–95 (1996).

Because Datil's claim arises from a personal injury, she could provide notice through her complaint. *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 940–41 (1998). Nonetheless, Bard argues that Datil's delay in filing means the complaint did not reasonably notify it of the alleged breach. Typically, reasonableness is a question of fact that depends on the particular circumstances of each case. *Malawy v. Richards Mfg. Co.*, 150 Ill. App. 3d 549, 561 (1986) ("An evaluation of whether the notice requirement has been complied with must be based upon the factual setting of each case and the circumstances of the parties involved."). The question becomes one of law, however, "[w]hen no inference can be drawn from the evidence other than that the notification was unreasonable." *Maldonado*, 296 Ill. App. 3d at 940. Bard argues that the Court must find Datil's notification unreasonable as a matter of law because Datil delayed filing the complaint for over fifteen-months after she experienced pain that she attributed to the Align. *See, e.g.*, *Branden v. Gerbie*, 62 Ill. App. 3d 138, 141 (1978) ("In view of the record before us . . . only one inference can be drawn that is, that the delay of 15 months in giving notice was not, as a matter of law, within a reasonable time after plaintiff should have discovered the breach."). But "[w]hen delay in notification does not result in prejudice to the defendant, it is not generally viewed as unreasonable." *Maldonado*, 296 Ill.

13

App. 3d at 940. Nothing in the record suggests that Bard has suffered prejudice from Datil's delay in filing suit or that Datil engaged in bad faith in doing so. And although Datil testified that she experienced pain several months after the implantation surgery in 2012, her revision surgery occurred in May 2013, only several months before she filed suit in October 2013. Because the evidence before the Court does not only allow for a finding of unreasonableness, whether Datil's filing of the complaint constituted reasonable notice to Bard remains a question for the jury. *See id.* (eleven-month delay not necessarily unreasonable as a matter of law where there was no evidence of prejudice to the defendant or bad faith by the plaintiff); *Prager v. Allergan, Inc.*, No. 89 C 6721, 1990 WL 70875, at *2 (N.D. Ill. May 2, 1990) (question of fact existed as to whether twenty-one month delay in providing notice was reasonable).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Bard's motion for partial summary judgment [80]. The Court denies Bard's motion to strike Plaintiff's statement of additional facts [93]. The Court enters judgment for Bard on Datil's claims for negligence related to a manufacturing defect and negligent inspection, marketing, packaging, and selling (parts of Count I), and strict liability manufacturing defect (Count III). Datil's claims for negligent and strict liability failure to warn (part of Count I and Count IV), strict liability design defect (Count II), breach of express warranty (Count V), breach of implied warranty (Count VI), and punitive damages (Count VIII) remain pending.

Dated: September 30, 2020

                                                        SARA L. ELLIS
                                                        United States District Judge